UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AMANDA FUSELIER,

        Plaintiff,

      v.

CAROLYN COLVIN, Commissioner of
Social Security Administration,

        Defendant.

No. 4:16-CV-5053-EFS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Before the Court are cross motions for summary judgment. ECF Nos. 16 & 17. Plaintiff Amanda Fuselier appeals the denial of benefits by the Administrative Law Judge (ALJ). ECF No. 16. Ms. Fuselier contends the ALJ erred because she (1) improperly weighed the medical testimony; (2) failed to consider lay testimony; and (3) improperly discredited Ms. Fuselier. ECF No. 16. The Commissioner of the Social Security Administration ("Commissioner") asks the Court to affirm the ALJ's decision that Ms. Fuselier is not disabled under the Social Security Act. ECF No. 17. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court remands for further proceedings.

///

//

/

ORDER - 1

**A.    Statement of Facts[1]**

Ms. Fuselier was born in 1980. Administrative Record (AR) at 250. She dropped out of school after eighth grade, but subsequently obtained her GED. AR at 69. She has three biological children and one stepchild. AR at 56. Ms. Fuselier has been diagnosed with a number of physical and mental conditions including diabetes mellitus with peripheral neuropathy; lumbago; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; borderline personality disorder traits; and cannabis dependence with history of polysubstance dependence. AR at 21. Ms. Fuselier's depression and anxiety seem to be related, at least in part, to sexual abuse that she experienced as a child. AR at 21. She has engaged in multiple suicide attempts, with the most recent apparent attempt occurring in December 2013. AR at 62. Ms. Fuselier manages her conditions using a variety of medications including insulin, Gabapentin, Mirapex, Lamictal, Lexapro, and Risperidone. AR at 1160.

Ms. Fuselier has limited employment history. AR at 416–23. She has worked primarily as a home caregiver, but it appears that these positions primarily involved working for family members — Ms. Fuselier's mother (Linda Bates) and aunt (Brenda Armijo). *See, e.g.*, AR at 265, 274. Ms. Fuselier reports that she has not worked since approximately April 2013, AR at 50, although the ALJ found that Ms. Fuselier's reported income for 2013 casts some doubt on when she stopped working

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

and whether she was working at a substantial gainful activity level during the reported period of disability.[2]

## B.   Procedural History

On March 19, 2012, Ms. Fuselier protectively filed for Disability Insurance Benefits, AR at 250–57, and on March 21, 2012, she protectively filed for Supplemental Insurance Benefits, AR at 258–64. Her alleged onset date is April 1, 2010. AR at 250, 258. On July 12, 2012, Ms. Fuselier's claims were denied. AR at 203–06. On November 9, 2012, her claims were again denied on reconsideration. AR at 210–14.

On June 26, 2014, a hearing was held before ALJ Lori L. Freund. AR at 39. Ms. Fuselier and Diane Kramer, an independent vocational expert, testified. AR at 39. The ALJ determined that Ms. Fuselier has the severe impairments of diabetes mellitus with peripheral neuropathy; lumbago; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; borderline personality disorder traits; and cannabis dependence with history of polysubstance dependence. AR at 21. The ALJ determined, however, that Ms. Fuselier's impairments do not meet or medically equal the severity of any listed impairments. AR at 25. Despite her impairments, the ALJ also ultimately found that Ms. Fuselier has the residual functional capacity to perform light work; lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; stand

---

[2] Ms. Fuselier's mother, Linda Bates, filed a declaration indicating that a large part of Ms. Fuselier's income for 2013, $13,890, represented gifts of money from Ms. Bates. AR at 323. On Ms. Fuselier's tax returns, this money was reported as business income. AR at 327, 330. As the issue of whether Ms. Fuselier participated in substantial gainful activity was not clearly decided by the ALJ, *see* AR at 21, and is therefore not properly before this Court, the Court declines to address the issue. Nevertheless, as the Court is remanding this case to the ALJ, the Court notes that the ALJ may need to resolve this issue should it be determined that an award of benefits is otherwise appropriate.

and walk for a total of up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday; occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds; can frequently balance but only occasionally stoop, kneel, crouch, or crawl; should avoid concentrated exposure to extreme cold or heat, or hazards such as unprotected heights or moving machinery; is limited to simple, routine, and repetitive tasks; would need to work away from the general public but is capable of superficial contact with a small number of coworkers; can perform no tandem tasks; and is capable of occasional changes in work duties, but should avoid production rate or pace work. AR at 27. Based on this assessment, the testimony of the vocational expert, and Ms. Fuselier's age, education, and work experience, the ALJ concluded Ms. Fuselier could perform work that exists in sufficient quantity in the national economy, such as office cleaner or mail clerk. AR 30–31.

On May 30, 2016, the Appeals Council denied review of the ALJ's decision. AR at 1–3. Ms. Fuselier then filed this lawsuit, appealing the ALJ's decision. ECF No. 5. Subsequently, the parties filed the instant summary judgment motions. ECF Nos. 16 & 17.

**C. Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision maker uses a five-step sequential

ORDER - 4

evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age,

ORDER – 5

education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if she establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work, but cannot — considering her age, education, and work experience — engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Here, the ALJ denied Ms. Fuselier's claims at step five after finding that Ms. Fuselier could perform work that existed in sufficient quantity in the national economy. AR at 30–31.

**D.  Standard of Review**

On review, a court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). A court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support

the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). Any inferences and conclusions that the ALJ may reasonably draw from the evidence will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). A court must uphold the ALJ's decision, even if other rational interpretations exist. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E. Analysis**

The Court addresses each of Ms. Fuselier's challenges to the ALJ's decision.

**1.    Medical Testimony**

Ms. Fuselier first argues that the ALJ improperly weighed the medical testimony regarding mental illness. Specifically, the ALJ discounted the opinions of examining mental health professionals Dr. Kouzes, Dr. Genthe, and Dr. Orr, and gave the greatest weight to an opinion by non-examining mental health professional Dr. Martin. In

ORDER - 7

disability benefits cases, there are three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide "clear and convincing" reasons for rejecting an examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id.* "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks omitted).

        *a.   Dr. Genthe*

      Ms. Fuselier argues that the ALJ erred in weighing Dr. Genthe's opinion based on a misreading of his findings. The ALJ gave "great weight" to Dr. Genthe's opinion and cited the significant limitations found by Dr. Genthe, but noted that "Dr. Genthe also reported these limits were only expected to last three months." AR at 29; *see also* AR at 22 ("Dr. Genthe opined prognosis was guarded as he thought it unlikely she would be able to function adequately until her symptoms were managed more effectively, at least three months."). The ALJ found that this opinion as to a short duration for severe impairment aligned with evidence in the record that Ms. Fuselier "has had short periods of time when her symptomatology is more severe, followed by periods of doing relative well." AR at 29.

      The three-month durational language, however, appears nowhere in Dr. Genthe's opinion. As noted by Ms. Fuselier, Dr. Genthe found that "a

ORDER – 8

period of *no less than* *months* might be sufficient to address her treatment needs at least moderately well." AR at 525 (emphasis added). The Commissioner did not address this issue in its motion for summary judgment, and instead repeated the error by continuing to inject a three-month durational limit into Dr. Genthe's opinion.

Given the fact that impairment must last at least 12 months in order for a claimant to qualify for security income and disability benefits, 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A), the ALJ's reading of a three-month limitation into Dr. Genthe's opinion plainly would have affected the ALJ's interpretation of Ms. Fuselier's disability. This is especially true given the fact that the ALJ attributed Dr. Genthe's opinion "great weight," and Dr. Genthe opined that Ms. Fuselier would not be able to work until her conditions were better managed. It is also possible that the ALJ may have assigned a different weight to Dr. Genthe's opinion had the misreading not occurred. The Court therefore remands for the ALJ to reassess Dr. Genthe's opinion without the erroneous insertion of the three-month durational limitation.

　　　　b.　*Dr. Kouzes*

Ms. Fuselier argues that the ALJ improperly gave only "some weight" to Dr. Kouzes's opinion based on the ALJ's findings that the opinion was not consistent with Ms. Fuselier's mental status exam and was primarily based on Ms. Fuselier's subjective complaints. Ms. Fuselier argues that the ALJ failed to cite any inconsistencies between Dr. Kouzes's findings and the mental status exam, and that no inconsistencies actually exist. In addition, Ms. Fuselier claims that

the ALJ provided no basis for her finding that Dr. Kouzes's opinion was primarily based on Ms. Fuselier's subjective complaints.

The Court first notes that the ALJ's explanation for discounting Dr. Kouzes's opinion is abbreviated and consists of only one sentence spanning four lines in her opinion, making it difficult to evaluate on review. AR at 30. Ms. Fuselier correctly argues that the ALJ could only disregard Dr. Kouzes's opinion for clear and convincing reasons. ECF No. 16 at 7–8. In this case, however, the ALJ did not disregard Dr. Kouzes's opinion, but rather gave it "some weight," and, in fact, referenced it in other sections of the opinion, AR 24–25. The ALJ's explanation for discounting the opinion — inconsistency with other evidence in the report and that the opinion "appears to be based on the subjective complaints of an individual who is not fully credible," AR at 30 — are both appropriate considerations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); *id.* ("The incongruity between [the treating physician's] Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting [the treating physician's] opinion of [the claimant's] limitations.").

The Court holds that the ALJ's finding that the report contained inconsistencies and was likely based on subjective complaints were reasonable. The Court notes, however, that the ALJ's analysis of Ms. Fuselier's credibility contained errors, as addressed below. Accordingly, on remand the ALJ should reassess whether Ms. Fuselier's

subjective complaints are credible and how that affects the weight of Dr. Kouzes's opinion.

c.    *Dr. Orr*

As to Dr. Orr, Ms. Fuselier argues that the ALJ improperly rejected portions of Dr. Orr's opinion. The ALJ indicated that she rejected the findings because Dr. Orr labeled those findings as tentative due to questionable results for the Wechsler Memory Scale-Fourth Edition (WMS-IV) exam, which may have indicated malingering. Ms. Fuselier argues that the findings rejected by the ALJ — that Ms. Fuselier would have difficulty with emotional stability and carrying out tasks in a work-like setting — were not based on the results of the WMS-IV test. The ALJ gave "great weight" to Dr. Orr's opinion, apart from the portions indicated. AR at 29.

In his report, Dr. Orr did note that his diagnosis was "tentative." AR at 900. This qualification is included above a section labeled "Diagnosis." AR at 900. Subsequently, Dr. Orr includes three additional sections: "Prognosis," "Capability of Managing Funds," and "Medical Source Statement." AR at 901. It is under the "Medical Source Statement" section that Dr. Orr addresses Ms. Fuselier's ability to function at work. He explained:

> Results from the Wechsler Memory testing indicates [sic] significantly impaired memory function. There are significant questions regarding the validity of responses on this test. She currently suffers from marked depression and anxiety. She continues to have psychotic symptoms. She experiences a number of PTSD symptoms related to the emotional and sexual abuse. Currently Amanda would have difficulty maintaining emotional stability or being consistent in carrying out tasks in a work-like setting.

ORDER - 11

AR at 901. Based on a plain reading of the report, Dr. Orr's indication that his diagnosis was tentative does not extend to his finding under "Medical Source Statement." Dr. Orr again noted the questionable findings of the memory test under this subheading, but proceeded to make separate findings as to Ms. Fuselier's ability to function in a work environment. There is no indication in the report that these later findings were tentative. In addition, it is not clear that the results of the WMS-IV, a memory exam, would influence a practitioner's findings as to emotional stability or being able to carry out tasks in a work-like setting.[3] Accordingly, without any additional explanation as to the ALJ's rejection of Dr. Orr's findings, the Court holds that the rejection was unreasonable.

> d.   *Dr. Martin*

Ms. Fuselier also contends that the ALJ improperly credited Dr. Martin, a non-examining expert, over the examining mental health practitioners, and that Dr. Martin failed to provide sufficient support for her findings. In general, the opinions of examining sources are entitled to greater weight than are the opinions of non-examining sources. *Garrison*, 759 F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*,

---

[3] See the following explanation from Pearson, the publisher of the WMS-IV:

> The Wechsler Memory Scale—Fourth Edition is an individually administered battery designed to assess various memory and working memory abilities of individuals ages 16-90 years. The WMS-IV offers a brief evaluation of cognitive status and provides a detailed assessment of clinically-relevant aspects of memory functions commonly reported in individuals with suspected memory deficits or diagnosed with a wide range of neurological, psychiatric, and developmental disorders.

*Wechsler Memory Scale—Fourth Edition (WMS-IV)*, Pearson, *Training-Overview of the Wechsler Memory Scales-Fourth Edition (WMS-IV)*(Sept. 9, 2011), *available at* http://www.pearsonclinical.com/psychology/products/100000281/wechsler-memory-scale--fourth-edition-wms-iv.html#tab-training.

ORDER - 12

528 F.3d 1194, 1198 (9th Cir. 2008)). "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *Id.* (quoting § 404.1527(d)(3)).

The ALJ gave "significant weight" to Dr. Martin's opinion. AR at 29. She explained that Dr. Martin has "specialized expertise" in psychology and had the opportunity to review all of the evidence in the record. AR at 29. The ALJ concluded that "Dr. Martin's overall opinion is consistent with the longitudinal medical history, objective medical findings, and the opinion of the non-examining state agency psychological consultant . . . ." AR at 29.

For most questions, Dr. Martin did not include an explanation for her findings and only generally referenced other portions of her submission,[4] and the written portion of question 1 of the Medical Source Statement was left blank, despite the form's clear directives that specific sources and reasoning be included for each question. *See* AR at 1180–85. Even in the more complete responses provided by Dr. Martin to interrogatories #7 and #8, she did not consistently provide citations to the record to support her findings. *See* AR at 1175–77, 1179. The ALJ did not mention Dr. Martin's lack of support.

As noted above, the weight of a non-examining source's opinion hinges on the support provided. Accordingly, the Court holds that Dr. Martin's lack of support for many of her findings should have been considered by the ALJ. On remand, the ALJ should both weigh this lack of

---

[4] Dr. Martin included notes such as "See Attached Responses to Interrogatory Items 7 and 8" and "See Responses to Interrogatory." AR at 1180–85.

support and reevaluate Dr. Martin's opinion as compared with the opinions of the examining mental health professionals, given the Court's other holdings.

### 2. Lay Testimony

Ms. Fuselier next argues that the ALJ committed reversible error by failing to consider the lay testimony submitted by Ms. Fuselier's aunt, Brenda Armijo, who was also her employer at times. The Commissioner concedes that "the ALJ did not specifically mention the statement from Plaintiff's aunt," but argues that the omission was harmless because the ALJ considered similar evidence and the aunt's statement was inconsistent with evidence in the record. ECF No. 17 at 11–12.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ may not disregard competent lay witness testimony without comment and therefore must give specific, germane reasons for disregarding the testimony. *Id.; Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The Court therefore holds that it was error for the ALJ to fail to address the declaration made by Ms. Armijo.

The Court also holds that this error was not harmless. The Commissioner argues that that Ms. Armijo's statement was duplicative of statements made by Ms. Fuselier and was inconsistent with other evidence in the record. ECF No. 17 at 11–12. This argument, however, only amplifies the importance of considering the declaration and weighing it appropriately, as the statement could have bolstered Ms. Fuselier's

ORDER – 14

credibility. As both a family member of Ms. Fuselier and an employer who made modifications in an attempt to accommodate Ms. Fuselier, but eventually fired her despite those accommodations, Ms. Armijo's declaration is highly relevant to Ms. Fuselier's disability claim. The Court cannot say with certainty that the ALJ would have reached the same conclusion had she evaluated Ms. Armijo's declaration. In addition, the post hoc reasoning provided by the Commissioner on appeal is insufficient to justify the ALJ's decision when no explanation was given by the ALJ herself. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (citing *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947))). The Court makes no finding as to the weight that the ALJ should give to Ms. Armijo's declaration, but only directs that the statement be expressly considered on remand.

### 3. Claimant Credibility

Finally, Ms. Fuselier argues that the ALJ erred in finding Ms. Fuselier not credible because the ALJ did not provide "a specific, clear, and convincing reason to do so." ECF No. 16 at 17. Ms. Fuselier claims that the ALJ erred by basing her negative credibility determination on (1) Ms. Fuselier's inconsistent symptom reports regarding hallucinations; (2) Ms. Fuselier's inconsistent reports as to her suicide attempts; (3) Ms. Fuselier's noncompliance with medications; (4) Ms. Fuselier's account of when she stopped working, as compared with her reported income; (5) Ms. Fuselier's failure to disclose substance abuse and legal history to Dr. Orr; and (6) a finding that Ms.

Fuselier's daily activities were inconsistent with her claims of disability. Ms. Fuselier seems to concede that Dr. Orr's finding of potential malingering was an appropriate consideration for the ALJ's negative credibility finding, but argues that the other errors in the credibility analysis justify remand.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014. Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's testimony. *Id*. An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). To discredit a claimant's testimony when a medical impairment has been established, however, the ALJ must provide specific, cogent reasons for the disbelief. *See id*. at 636 ("Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between

testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." (internal quotation marks omitted)).

At step one of the credibility determination, the ALJ found that Ms. Fuselier's medically determinable impairments could reasonably be expected to cause the alleged symptoms AR at 28. At step two, however, the ALJ found that Ms. Fuselier's "assertion of total disability under the Social Security Act is not supported by the weight of the evidence" and noted that the "record documents evidence of inconsistency and exaggeration suggestive of motivation for secondary gain in the form of establishing entitlement to Social Security disability payments." AR at 28.

The Court holds that many of the explanations given by the ALJ for finding Ms. Fuselier not credible are reasonable and appropriate. The ALJ appropriately considered Ms. Fuselier's reports of occasionally working full time during her period of disability and engaging in household tasks apparently inconsistent with the reported level of disability. *See Orn*, 495 F.3d at 636. The ALJ was also correct to consider Ms. Fuselier's noncompliance with medication for both her medical and psychological impairments. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (A claimant's failure to assert "good reasons" for failure to seek treatment or follow a proposed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony."); *see also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) ("[T]here was no medical evidence that [the claimant's] resistance [to treatment] was attributable to her mental impairment rather than her own personal

preference, and it was reasonable for the ALJ to conclude that the level or frequency of treatment [was] inconsistent with the level of complaints." (internal quotation marks omitted)). Consideration of Ms. Fuselier's inconsistent statements was also appropriate. *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). To the extent that the ALJ considered Ms. Fuselier's criminal history, continued use of marijuana despite the recommendations of multiple medical professionals, and concern expressed by medical professionals regarding Ms. Fuselier's numerous trips to the emergency room with reports of pain that could not be objectively verified, those considerations are also permissible. *See id.*

Nevertheless, the Court also notes that apparently "inconsistent" reports as to mental health symptoms and the fact that treatment is effective for mental health conditions must be evaluated within the context of the disorder. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). Here, the ALJ noted that "[t]reatment records suggest that the claimant has experienced some waxing and waning of symptoms, but that she has had a generally positive response to treatment. . . . In view of this evidence, caution must be exercised when evaluating allegations pertaining to symptoms and limitations set forth by the claimant in any setting involving the potential for secondary gain." AR at 28–29. The fact that a social security claimant has a positive response to treatment is not, however, a proper consideration for discrediting the claimant unless that positive response is consistent over time. *Attmore*, 827 F.3d at 878 ("Although the ALJ pointed to isolated signs of improvement, the ALJ could not find medical improvement on that basis

ORDER - 18

unless the ups and the downs of [the claimant's] development showed *sustained* improvement.").

In this case, the ALJ noted that Ms. Fuselier showed improvement in July 2012, AR at 28–29, but the ALJ does not include the fact that Ms. Fuselier intentionally overdosed on medication in December 2013, AR at 1034–42. It is the nature of some mental disorders that "symptoms wax and wane over time," *Attmore*, 827 F.3d at 878, and the Ninth Circuit has held that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. In addition, "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001). In *Garrison*, the Ninth Circuit explained:

> Here, the record reveals a tortuous path: some symptoms came and went (*e.g.*, paranoia, hallucinations, pseudo-seizures), some symptoms persisted nearly the whole period (*e.g.*, insomnia, bouts of depression and mania), and still other symptoms appear to have remained a constant source of impairment (*e.g.*, intense anxiety). Garrison's diagnoses of PTSD and bipolar disorder remained constant across all treatment records, and her GAF score consistently hovered around 50 to 55. She remained in this condition even while going to great lengths to minimize stressors in her life — to the point that she could not go to the grocery store alone — and, when she did try to work for a brief period, was fired because of her mental impairments. The ALJ erred in concluding that a few short-lived periods of temporary improvement in Garrison's mental health symptoms undermined Garrison's testimony.

*Garrison*, 759 F.3d at 1018.

Accordingly, although there are legitimate factors weighing against Ms. Fuselier's credibility, to the extent that the ALJ relied on

ORDER - 19

isolated instances of improvement in symptoms and inconsistency in reporting mental health symptoms such as hallucinations to discredit Ms. Fuselier, the Court holds that those findings were made in error. On remand, the ALJ should consider whether Ms. Fuselier's improvement has been sustained over time and whether inconsistent statements regarding hallucinations indicate untruthfulness or variation in symptomology over time. The Court makes no finding as to whether Ms. Fuselier should ultimately be found credible or not credible following an appropriate evaluation of the evidence in the record.

**C.   Conclusion**

For the above-given reasons, the Court remands the case for further proceedings. Although the Court holds that the ALJ erred in some respects, it is not clear from the record, as it currently stands, whether Ms. Fuselier is disabled or whether she could perform work that exists in sufficient quantity in the national economy.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Ms. Fuselier's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED.**

2.   The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED.**

3.   This matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.   The Clerk's Office is to enter **Judgment** in favor of Ms. Fuselier.

5.   An application for attorney fees may be filed by separate motion by Ms. Fuselier.

ORDER – 20

6.    The case shall be **CLOSED.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ Lori L. Freund.

**DATED** this 13th  day of January 2017.


                    ___          s/Edward F. Shea          _____
                              EDWARD F. SHEA
                    Senior United States District Judge